[No. 17318. Department Two. May 4, 1923.]

S. J. SIMONSON *et al., Respondents,* v. RAY HUFF *et al., Appellants.*[1]

MUNICIPAL CORPORATIONS (389)—USE OF STREETS—ACCIDENT AT CROSSING—NEGLIGENCE—EVIDENCE—SUFFICIENCY. The negligence of a stage driver who struck and killed a boy at a street intersection, is a question for the jury, where he was driving on the left side of the road, on a wet and slippery pavement, at such speed that he could not control his car at the intersection, his view of pedestrians being obscured by a street car.

SAME (391)—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY. Whether a boy, struck by an auto stage approaching a street intersection on the left side of the street, was guilty of contributory negligence in not looking to the left after reaching the center of the street, was a question for the jury, where he looked before starting to cross, and waited for the passage of a street car which obscured the view of the auto stage, approaching on the wrong side of the street.

[1]Reported in 215 Pac. 49.

WITNESSES (74) — CROSS-EXAMINATION — SCOPE — OCCUPATION OR BUSINESS. It is error to exclude, on cross-examination, testimony as to the occupation of a witness, since it may affect his credibility.

APPEAL (457)—REVIEW—HARMLESS ERROR—EXCLUSION OF EVIDENCE. Error cannot be assigned on the exclusion of cross-examination as to the occupation of witness, to affect his credibility, in the absence of an offer to prove that his answer would have had the effect of discrediting him.

EVIDENCE (195) — OPINION EVIDENCE — MATTERS OF COMMON KNOWLEDGE. The jury being able to form its own conclusions from the facts, it is inadmissible to ask a passenger in an auto stage his opinion as to the manner in which it was driven and whether it was proper for the driver to apply the brakes as he did.

SAME (101)—DECLARATIONS—ADMISSIONS AGAINST INTEREST. In an action for death against a firm operating an auto stage, of which the driver was a member, the driver's statement, made to witness on the following day, that maybe he was to blame, is admissible as an admission against interest.

Appeal from a judgment of the superior court for Yakima county, Nichoson, J., entered December 21, 1921, upon the verdict of a jury rendered in favor of the plaintiffs, in an action for wrongful death. Affirmed.

*Lee C. Delle* and *Van Dyke & Thomas,* for appellants.
*Grady, Shumate & Velikanje,* for respondents.

FULLERTON, J.—The respondents, Simonson, brought this action against the appellants, Huff and Smith, to recover for the death of their minor son. From a judgment in their favor, this appeal is prosecuted.

The appellants are copartners, and, under their partnership name of Triangle Taxi & Stage Company, operate an automobile stage line between a place known as Cowiche and the city of Yakima. As the route traveled by the company's stages approaches the corporate limits of the city of Yakima, it passes over a public highway known as Summit View Avenue. In the center of this highway is a street car track, over

which street cars are regularly operated. The surrounding territory is a residence district, and is laid out into blocks and streets in the manner usual in such cases. The highway through this district is paved with black-top paving on each side of the street between the outer lines of the street car track and the curbing next to the property lines. At the place where the accident happened, which resulted in the death of the boy, is an intersecting street, known as Alberta Avenue.

As the stage of the appellants approached this intersecting street, traveling in an easterly direction, it overtook a wagon and team traveling in the same direction. To pass around the wagon, the stage driver turned to the left, and, seeing a street car approaching on the other side of the intersecting street, continued on the turn until he reached the north side of the avenue, so as to pass to the left of the street car. At this time the minor son of the respondents approached Summit View Avenue from the south, walking on the west side of Alberta Avenue, intending to cross Summit View Avenue at the street intersection. He, too, saw the approaching street car, and stood on the curb waiting for it to pass the intersecting street. As the car passed the intersection, the boy started across the street on the run, and as he reached a point near the center of the paved portion on the north side of Summit View Avenue, the approaching stage struck him, crushing him to death.

The driver of the stage did not materially slacken the speed of the stage from the time he turned to the left to go around the team and wagon until he saw the boy come from behind the street car. At that time he seems to have done everything humanly possible to avoid striking the boy, but was unable either to stop

the stage or to control its direction, owing to the wet, slippery condition of the pavement. Up to the time he. saw the boy, the driver says he was traveling at about twenty-two miles an hour. Other witnesses fix his rate of speed even higher, although none testify that he was exceeding the speed limit. The boy, though but six and one-half years of age, exercised, according to the eye-witness to the accident, the caution of an older person. He saw that he had plenty of time to pass in front of the approaching team on his left, and when reaching the center of the street looked for approaching vehicles on his right. He did not, however, look in the direction of the stage which struck him.

Noticing the assignments of error in a somewhat different order than they are set out in the briefs of counsel, the first is that there should have been a directed verdict. The contention on this point, if we have correctly gathered the arguments, is two-fold, first, that there was no negligence shown on the part of the appellants; and second, if it be conceded that there was sufficient evidence to go to the jury on that question, the evidence conclusively establishes that the boy was guilty of such contributory negligence as to bar a recovery. But we cannot think these questions merit extended discussion. As to the appellants, their driver was driving his vehicle on the wrong side of the road; he was driving at such a rate of speed as to prevent the control of his automobile; he approached a street intersection while so driving in a residence section, where he had reason to anticipate meeting a person crossing the street in front of him; and he approached the intersection at a time when a street car prevented him from seeing whether a person was so crossing or not. Clearly there was here sufficient evi-

dence to carry the question of negligence to the jury. As to the boy, there is no evidence that he did not exercise the utmost prudence, unless the fact that he did not look for approaching vehicles from his left after he reached the center of the street was·want of prudence. But this is not an imperative duty under all circumstances, and it was for the jury to say whether it was a duty in this instance. There was, therefore, no error on the part of the court in submitting these questions to the determination of the jury.

The respondent S. J. Simonson stated on his direct examination that he was engaged in business in the city of Yakima, and had been so engaged for a number of years. On cross-examination he was asked what that business was, to which an objection was interposed and sustained by the court. The court sustained the objection on the ground that the matter had not been gone into the witness's direct examination. But this was not a sufficient reason for excluding the question. From the earliest times it has been held relevant to inquire of a witness as to his occupation. 1 Greenleaf on Evidence, p. 604 (15th ed.), § 456. This on the principle that the occupation of the witness is one of the matters which will enable the jury to better pass upon his credibility; the presumption being that a witness who follows a disreputable or degrading vocation or calling is not as likely to be truthful as one who follows some legitimate or honorable vocation.

But notwithstanding the court was in error in its ruling, we cannot conclude it ground for reversal. There is nothing in the record to indicate that the ruling was prejudicial to the appellants. If the witness had been permitted to answer, and had stated that his business was a particular one of many that might be named, his credibility would have been enhanced rather

than reflected upon, and his answer would in no way have availed the appellants; it is only in the case that the witness named a disreputable or degrading business or vocation that the appellants would have benefited by his answer. To have made the error available, therefore, the appellants should have informed the court what they expected to prove by the answer, and made the offer a part of the record. This court will not reverse the cause and put the parties to the burden of a new trial on the mere chance that an answer favorable to the respondents would have been returned. *Norman v. Hopper*, 38 Wash. 415, 80 Pac. 551; *Chlopeck v. Chlopeck*, 47 Wash. 256, 91 Pac. 966; *Hightower v. Union Savings & Trust Co.*, 88 Wash. 179, 152 Pac. 1015, Ann. Cas. 1918A 489; *Olive Co. v. Meek*, 91 Wash. 169, 157 Pac. 460.

A witness for the appellants, who was in the stage at the time of the accident resulting in the death of the boy, was asked his opinion concerning the manner in which the stage was driven on that occasion, and whether or not in his opinion it was proper for the driver of the stage to apply the brakes at the time he did in fact apply them. The court sustained objections to the questions, and error is predicated thereon. But the rulings were without error. Special skill will not entitle a witness to give an expert opinion where the jury is capable of forming its own conclusions from the facts shown. In other words, whether the acts of the driver of the stage on the occasion were careful and prudent or were negligent was within the common knowledge of mankind, and thus not a subject for expert opinion.

The respondent S. J. Simonson testified that, on the morning of the day following the accident, he was at the place thereof looking it over in the company of the driver, Ray Huff, who was a member of the partner-

ship operating the stage line. He further testified that he said to Huff, "It looks as though you were pretty much to blame," and that Huff answered, "Well, maybe I am." Objection was made to the testimony at the time it was offered, and subsequently a motion to strike it was made, which objection and motion the trial court overruled. Error is assigned on the rulings, but we think them correct. The answer was in the nature of an admission against interest, and such admissions are always competent evidence in favor of the adverse party.

The appellants assign error upon two of the instructions given by the court to the jury. The first of these is but a statement of the statutory rules governing the conduct of drivers of automobiles upon the public highways, followed by the statement that:

"You are instructed that any violation of any of the statutory requirements may be considered by you as evidence of negligence, but before you would be justified in finding a verdict against the defendants on account of such negligence, you should also be convinced by a fair preponderance of the evidence that the violation of the statute was the proximate cause of the injury."

The second of the instructions reads as follows:

"If you should determine from the evidence that the defendants were lawfully upon and proceeding along the highway at the time when the driver, Ray Huff, first observed the deceased and that the position of the defendants thus created was one of peril or sudden emergency, then I instruct you that the law does not hold defendants to responsibility in the same degree for sound judgment and proper action as under other circumstances. The fact that the driver had to act suddenly in an emergency and without opportunity for deliberation is a circumstance to be taken into consideration in determining what is ordinary care in that situation.

"If, on the other hand, you find from a fair preponderance of the evidence that the defendants were

wrongfully occupying their location on the public highway at the time said driver first observed the deceased, then said defendants are not relieved from exercising the same degree of care and prudence that is ordinarily required had no peril or sudden emergency presented itself.''

We see no valid objections to these instructions. The first was clearly pertinent to the issues, and the objection to the second is to the concluding paragraph, against which this argument is made:

"This rule was given by the court under the apprehension that the right to pass around the team, with the oncoming street car less than two hundred yards distant, was wrong, and if the automobile, after passing the street car and in the act of turning over into the right hand side, the driver saw the boy before the car got clear over into the right hand side, then the automobile might be held to wrongfully occupy its location at such instance, which, if it did, would hold the defendants to the same degree of care and prudence ordinarily required where no peril or sudden emergency exists. This was prejudicial to the defendants.''

But we think the appellants mistake the meaning of the instruction. Manifestly, the court meant no more than to say that the rule of sudden emergency defined in the preceding paragraph did not apply to one who had brought the emergency upon himself by his own wrong. This is a correct statement of the rule. An automobile driver may not violate the rules of the road, and then invoke the doctrine of sudden emergency to relieve himself from liability to another who is injured as a result of his violation of such rules. The rule is applicable to those who are themselves without fault, not those who are at the time committing a wrong.

Complaint is also made of the refusal of the court to give certain requested instructions. These were

some twenty-eight in number, and we shall not notice them in detail. It is sufficient to say that the instructions given by the court fully cover the issues in the case in language as favorable to the appellants as the facts warranted. This was enough to comply with the rule. In this jurisdiction the court is not required to instruct other than in its own language, and, if it fully covers the issues, it is not a subject of complaint that it did not give a particular requested instruction, even though the instruction requested might have been one that could properly have been given.

There is no error and the judgment will stand affirmed.

MAIN, C. J., and TOLMAN, JJ., concur.